UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DWUAN TAMAUL PARKMAN,

        Petitioner,

v.                                  Case No. 23-cv-11857
                                  HON. MARK A. GOLDSMITH

BRYAN MORRISON,

        Respondent.

_____/

### OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS (Dkt. 1), DENYING A CERTIFICATE OF APPEALABILITY, AND DENYING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL

This is a habeas case brought pursuant to 28 U.S.C. § 2254.  Michigan prisoner Dwuan Tamaul Parkman was convicted of one count of first-degree criminal sexual conduct under Mich. Comp. Laws § 750.520b(1)(c), and one count of first-degree home invasion under Mich. Comp. Laws § 750.110a(2), following his second jury trial in the Wayne County Circuit Court.  He was sentenced as a fourth habitual offender under Mich. Comp. Laws § 769.12, to consecutive terms of 35 years to 35 years and one day in prison on the criminal sexual conduct conviction and 20 to 30 years in prison on the home invasion conviction in 2017.

In his petition, filed through counsel, he raises claims concerning the effectiveness of trial counsel (multiple claims), judicial bias, and the jury instructions (Dkt. 1).  For the reasons set forth below, the Court concludes that Petitioner is not entitled to relief on his claims and that his habeas petition must be denied.  The Court also concludes that a certificate of appealability and leave to proceed in forma pauperis on appeal must be denied.

## I.   BACKGROUND

Petitioner's convictions arise from an incident in which he broke into a hotel room and sexually assaulted a flight attendant in Romulus, Michigan in June, 2016.  The Michigan Court of Appeals described the facts, which are presumed correct on federal habeas review, 28 U.S.C. § 2254(e)(1); Wagner v. Smith, 581 F.3d 410, 413 (6th Cir. 2009), as follows:

> Defendant's convictions arise out of a sexual assault perpetrated against an 18-year-old Canadian flight attendant ("the victim") while she was staying overnight at a hotel near Detroit Metropolitan Airport. Defendant, who was a "regular" at the "Wheat & Rye" restaurant and bar that the victim patronized on the evening in question with two of her coworkers, followed the victim back to her hotel, the "Days Inn" hotel in Romulus. He waited until she was asleep, gained access to her room without her permission, undressed her as she slept under the influence of alcohol, and penetrated her vaginally while she was still unconscious.
>
> Surveillance footage from the restaurant showed that defendant was present during the same timeframe as the victim. Surveillance footage from outside the restaurant shows that shortly before the victim and her group left in a taxi, defendant went outside to the restaurant's rear parking lot, entered a car, drove to the front parking lot (where the taxi was waiting), backed into a parking space near the parking lot's exit, and turned off his car's headlights. He waited until the taxi pulled away, then turned on his headlights and followed immediately behind it.
>
> Defendant was not a hotel customer on the evening in question. The hotel's surveillance footage showed that after following the victim and her coworkers into the hotel lobby, defendant wandered around for some time, seemingly without aim, with a cell phone pressed to his ear. Defendant remained at the hotel for approximately three hours. At times, he went up to the victim's floor and walked around. At one point, when hotel staff was not present, defendant leaned over the front desk in the hotel lobby, flipping through a rolodex of hotel guests. He also reached over and appeared to grab a keycard from behind the counter. Defendant subsequently conversed with the night manager. He told the manager that he was "concerned about" his girlfriend because she had been "ill." Defendant gave the manager her name and room number, and after verifying that a person with that name was staying in the given room, the manager called the room, but there was no answer. At defendant's insistence, the manager called a second time, but there was again no answer. After this, the manager saw defendant leave and continue to wander around with his cell phone pressed to his ear. The manager assumed that defendant was continuing to try to call his girlfriend.

According to the victim, when she retired to her room for the evening, she opened her room door using one of the two keycards that had been provided to her—both of which she retained in her possession—and entered. She assumed that the door would fully close and automatically lock behind her, so she did not engage either the deadbolt or the swing-bar latch. It was later discovered that the door to the victim's room would often close incompletely, such that its automatic locking mechanism would not latch. When this occurred, the door could be pushed open from the outside with minimal force.

The victim went to her bed and video chatted with her boyfriend. While the two were conversing, she heard someone knocking at her door and "a voice telling [her] to let him in." She looked out of her room's peephole, but did not see anyone. The same thing happened once or twice more while the victim was speaking with her boyfriend. After hanging up with her boyfriend, the victim looked out the peephole again, did not see anyone, and then got into bed. She had been sick all day and felt "a little bit" intoxicated. So, she left the bathroom door open and the bathroom light illuminated, and fell asleep fully dressed in leggings, a shirt, and underwear.

The victim's next memory was of waking up in the bed on her back and finding that her legs were spread, she was nude from the waist down, and there was "a man on top of [her]." The man's face was "right in front of" her, but aside from the fact that he was an "older" African-American male, she could not see any details that would permit her to identify him. The victim "didn't know what to think," "was in shock," and "just started crying."

During defendant's second jury trial, the victim was no longer able to specifically recall whether the man on top of her was in any physical contact with her genitals or had penetrated her. She explained that, as a coping mechanism that she has learned in therapy, she has actively tried to "block ... out" her memories of the sexual assault. However, she indicated that her memory had been clearer at both the preliminary examination and defendant's first jury trial. Over defendant's objection, the victim testified that at her preliminary examination, she had testified that the man on top of her had been "raping" her and that his penis had been inside of her "genital opening[.]" She also testified that her memory concerning penetration had been the same at defendant's first jury trial, as had her testimony.

The victim's "next memory was standing at the door telling him that he needed to go." She could not recall the man getting off of her or how she had gotten to the door. Ultimately, however, the man left, and the victim called her mother. According to the victim's mother, the victim was "crying hysterically," "moaning," and unable to speak coherently. Eventually, her mother was able to get her calmed down enough to answer some questions about what had happened. In "half sentences," the victim indicated that "a black man had broken into her room" and

3

"hurt" her. After speaking with her mother and her grandmother, the victim went to the front desk and reported the incident, and the police were summoned.

A forensic examination of the victim was performed, which included the collection of swabs for DNA testing. During the examination, a nurse asked the victim whether the unknown man's penis had penetrated her vagina, the victim initially replied, "I think it did." But she then stated, "I'm pretty sure it did. 100% positive." Defendant's DNA matched the DNA collected from a swab taken from the victim's labia majora and neck.

The jury found defendant guilty of CSC-I and first-degree home invasion.

People v. Parkman, No. 340943, 2020 WL 3022552, *1-3 (Mich. Ct. App. June 4, 2020) (footnotes omitted).

Following his convictions and sentencing, Petitioner filed a motion for a new trial and evidentiary hearing (Ginther hearing) concerning the effectiveness of trial counsel with the state trial court. The trial court conducted the evidentiary hearing and denied the motion for new trial Post Conviction Hr'g Tr. (Dkt. 7-15); Ginther Hr'g Tr. (Dkt. 7-16).

Petitioner then filed an appeal of right with the Michigan Court of Appeals essentially raising the same claims presented in his habeas petition. The court denied relief on those claims and affirmed his convictions, but remanded the case for the trial court to articulate its reasons for imposing consecutive sentences. Parkman, 2020 WL 30222552 at *3–17. On remand, the trial court did so, and the Michigan Court of Appeals affirmed that decision. People v. Parkman, No. 340943, 2021 WL 527310, *1–3 (Mich. Ct. App. Feb. 11, 2021). Petitioner also filed an application for leave to appeal with the Michigan Supreme Court, which was denied in a standard order. People v. Parkman, 973 N.W.2d 130 (Mich. 2022).

Petitioner, through counsel, thereafter filed his federal habeas petition. He raises the following claims:

4

I.      Ineffective assistance of counsel denied him a fair trial.

a. Trial counsel rendered ineffective assistance by failing to voir dire the prospective jurors regarding the existence of racial prejudice.

b. Trial counsel rendered ineffective assistance by telling the jury during opening statement that he anticipated the evidence would show that Petitioner was a drug dealer.

c. Trial counsel rendered ineffective assistance by failing to request a misdemeanor entry without owner's permission instruction pursuant to MCL 750.115.

d. Trial counsel rendered ineffective assistance by failing to investigate Petitioner's cell phone records.

e. The cumulative effect of trial counsel's errors deprived Petitioner of his Sixth Amendment right to the effective assistance of counsel and his due process right to a fair trial.

II.     The trial court pierced the veil of judicial impartiality, thereby depriving Petitioner of his due process right to a fair trial.

III.    Two of the trial court's jury instruction were "fundamentally incompatible with the presumption of innocence" and due process, warranting habeas relief.

See Pet. Respondent filed an answer to the petition contending that it should be denied because certain claims are unexhausted, certain claims are procedurally defaulted, and all of the claims lack merit.  See Resp. (Dkt. 6).

## II.    LEGAL STANDARD

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified at 28 U.S.C. § 2241 et seq., sets forth the standard of review that federal courts must use when considering habeas petitions brought by prisoners challenging their state court convictions.  The AEDPA provides in relevant part:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that

5

was adjudicated on the merits in State court proceedings unless the adjudication of the claim--

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (1996).

"A state court's decision is contrary to ... clearly established law if it applies a rule that contradicts the governing law set forth in [Supreme Court cases] or if it confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent." Mitchell v. Esparza, 540 U.S. 12, 15–16 (2003) (punctuation modified). "The unreasonable application prong of § 2254(d)(1) permits a federal habeas court to grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts of petitioner's case." Wiggins v. Smith, 539 U.S. 510, 520 (2003) (punctuation modified). However, "[i]n order for a federal court find a state court's application of [Supreme Court] precedent unreasonable, the state court's decision must have been more than incorrect or erroneous. The state court's application must have been objectively unreasonable." Wiggins, 539 U.S. at 520–521 (punctuation modified). The "AEDPA thus imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be given the benefit of the doubt." Renico v. Lett, 559 U.S. 766, 773 (2010) (punctuation modified).

A state court's determination that a claim lacks merit "precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision."

6

Harrington v. Richter, 562 U.S. 86, 101 (2011) (punctuation modified). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. Pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or ... could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. Id. Thus, in order to obtain habeas relief in federal court, a state prisoner must show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id. Federal judges "are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." Woods v. Donald, 575 U.S. 312, 316 (2015). A habeas petitioner cannot prevail as long as it is within the "realm of possibility" that fairminded jurists could find the state court decision to be reasonable. Woods v. Etherton, 576 U.S. 113, 118 (2016).

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. Williams, 529 U.S. at 412. Section 2254(d) "does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" Harrington, 562 U.S. at 100. Furthermore, it "does not require citation of [Supreme Court] cases. Indeed, it does not even require awareness of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." Early v. Packer, 537 U.S. 3, 8 (2002)(emphasis in original).

7

The requirements of clearly established law are determined solely by Supreme Court precedent. Thus, circuit precedent does not constitute clearly established Supreme Court law and cannot provide the basis for federal habeas relief. Parker v. Matthews, 567 U.S. 37, 48–49 (2012) (per curiam). The decisions of lower federal courts, however, may be useful in assessing the reasonableness of a state court's ruling. Stewart v. Erwin, 503 F.3d 488, 493 (6th Cir. 2007).

Lastly, a state court's factual determinations are presumed correct on federal habeas review. See 28 U.S.C. § 2254(e)(1). A habeas petitioner may rebut this presumption only with clear and convincing evidence. Warren v. Smith, 161 F.3d 358, 360-361 (6th Cir. 1998). Moreover, habeas review is "limited to the record that was before the state court." Cullen v. Pinholster, 563 U.S. 170, 181 (2011).

### III.   ANALYSIS

#### A.  Procedural Default

As an initial matter, Respondent contends that Petitioner's judicial bias and jury instruction claims are barred by procedural default. Federal habeas relief may be precluded on a claim that a petitioner has not presented to the state courts in accordance with the state's procedural rules. Wainwright v. Sykes, 433 U.S. 72, 85-87 (1977). The doctrine of procedural default applies when a petitioner fails to comply with a state procedural rule, the rule is actually relied upon by the state courts, and the procedural rule is "adequate and independent." White v. Mitchell, 431 F.3d 517, 524 (6th Cir. 2006). "A procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on a state procedural bar." Harris v. Reed, 489 U.S. 255, 263–264 (1989). The last explained state court ruling is used to make this determination. Ylst v. Nunnemaker, 501 U.S. 797, 803–805 (1991).

8

The Michigan Court of Appeals rendered the last reasoned opinion on the judicial bias and jury instruction claims.  In denying relief, the court relied upon a state procedural bar – Petitioner's failure to object at trial.  Parkman, 2020 WL 3022552 at *10, 15.  The failure to make a contemporaneous objection is a recognized and firmly-established independent and adequate state law ground for refusing to review trial errors.  People v. Carines, 597 N.W.2d 130, 138 (Mich. 1999).  Moreover, a state court does not waive a procedural default by looking beyond the default to determine if there are circumstances warranting review on the merits.  Paprocki v. Foltz, 869 F.2d 281, 285 (6th Cir. 1989).  Plain error review does not constitute a waiver of state procedural default rules.  Girts v. Yanai, 501 F.3d 743, 755 (6th Cir. 2007)..  Nor does a state court fail to sufficiently rely upon a procedural default by ruling on the merits in the alternative.  McBee v. Abramajtys, 929 F.2d 264, 267 (6th Cir. 1991).  The Michigan Court of Appeals denied relief on these claims based on a procedural default – the failure to object at trial.

A state prisoner who fails to comply with a state's procedural rules waives the right to federal habeas review absent a showing of cause for noncompliance and actual prejudice resulting from the alleged constitutional violation, or a showing of a fundamental miscarriage of justice.  Coleman v. Thompson, 501 U.S. 722, 753 (1991).  To establish cause, a petitioner must establish that some external impediment frustrated the ability to comply with the state's procedural rule.  Murray v. Carrier, 477 U.S. 478, 488 (1986).  A petitioner must present a substantial reason to excuse the default.  Amadeo v. Zant, 486 U.S. 214, 223 (1988).  Such reasons include interference by government officials, attorney error rising to the level of ineffective assistance of counsel, or a showing that the factual or legal basis for a claim was not reasonably available.  McCleskey v. Zant, 499 U.S. 467, 493–494 (1991).

Petitioner neither alleges nor establishes cause to excuse this procedural default.[1] A federal habeas court need not address the issue of prejudice when a petitioner fails to establish cause to excuse a procedural default.  Smith v. Murray, 477 U.S. 527, 533 (1986).  Nonetheless, the Court finds that Petitioner cannot establish prejudice (or that he is otherwise entitled to habeas relief on the merits of these claims) because, as discussed above, and as explained by the Michigan Court of Appeals in reviewing the claims for plain error, the claims also lack merit.

Petitioner also fails to establish that a fundamental miscarriage of justice has occurred. The miscarriage of justice exception requires a showing that a constitutional violation probably resulted in the conviction of someone who is actually innocent.  Schlup v. Delo, 513 U.S. 298, 326–327 (1995).  "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." Bousley v. United States, 523 U.S. 614, 624 (1998).  "To be credible, [a claim of actual innocence] requires a petitioner to support his [or her] allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial."  Schlup, 513 U.S. at 324.  Petitioner makes no such showing.  He offers no new evidence, let alone reliable evidence, of his innocence that was not presented at trial.  These claims are thus barred by procedural default, otherwise lack merit, and do not warrant habeas relief.

---

[1]While Petitioner raised ineffective assistance of trial counsel claims on direct appeal, and does so here, he did not, and does not, allege that counsel was ineffective for failing to object to the trial court's conduct or the jury instructions. **Error! Main Document Only.**A claim of ineffective assistance of counsel asserted as cause to excuse a procedural default is an independent constitutional claim which must be properly exhausted in the state courts.  Edwards v. Carpenter, 529 U.S. 446, 453 (2000).  Because Petitioner did not do so, he cannot rely on ineffective assistance of trial counsel to establish cause to excuse his procedural default.  See Jacobs v. Mohr, 265 F.3d 407, 417–418 (6th Cir. 2001).

### B.  Merits

### 1.  Ineffective Assistance of Trial Counsel Claims

Petitioner first asserts that he is entitled to habeas relief because trial counsel was ineffective for: (1) failing to voir dire the prospective jurors regarding racial prejudice, (2) telling the jury during opening statement that he anticipated the evidence would show that Petitioner was a drug dealer, (3) failing to request a misdemeanor entry without owner's permission instruction under Mich. Comp. Laws § 750.115, and (4) failing to investigate cellphone records from his alleged second cellphone.

Petitioner also asserts that he is entitled to habeas relief due to the cumulative effect of trial counsel's alleged errors.  Respondent contends that a portion of these claims have not been properly exhausted in the state courts and that all of them lack merit.

The Michigan Court of Appeals considered such claims on direct appeal and denied relief. The court explained in relevant part:

> The "defendant has the burden of establishing the factual predicate for his claim of ineffective assistance of counsel...." People v. Hoag, 460 Mich. 1, 6; 594 N.W.2d 57 (1999). As this Court explained in People v. Lockett, 295 Mich. App. 165, 187; 814 N.W.2d 295 (2012):
>
>> Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise. To establish an ineffective assistance of counsel claim, a defendant must show that (1) counsel's performance was below an objective standard of reasonableness under prevailing professional norms and (2) there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different. [Citations omitted.]
>
> "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland v. Washington, 466 U.S. 668, 694; 104 S. Ct. 2052; 80 L. Ed. 2d 674 (1984). The "reasonable probability" standard can be satisfied by less than a preponderance of the evidence. Trakhtenberg, 493 Mich. at 56.

11

The "reviewing court must not evaluate counsel's decisions with the benefit of hindsight," but should "ensure that counsel's actions provided the defendant with the modicum of representation" constitutionally required. People v. Grant, 470 Mich. 477, 485; 684 N.W.2d 686 (2004), citing Strickland, 466 U.S. at 689 ("A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."). "Defense counsel is given wide discretion in matters of trial strategy because many calculated risks may be necessary in order to win difficult cases." *Unger*, 278 Mich. App. at 242. Thus, there is a "strong presumption that trial counsel's performance was strategic," and "[w]e will not substitute our judgment for that of counsel on matters of trial strategy[.]" Id. at 242-243. "Yet a court cannot insulate the review of counsel's performance by calling it trial strategy." Trakhtenberg, 493 Mich. at 52. "The inquiry into whether counsel's performance was reasonable is an objective one and requires the reviewing court to determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." People v. Vaughn, 491 Mich. 642, 670; 821 N.W.2d 288 (2012) (quotation marks and citation omitted). Accordingly, the reviewing court must consider the range of potential reasons that counsel might have had for acting as he or she did. *Id*.

### 1. PERFORMANCE DURING JURY SELECTION

During the prosecution's voir dire of the prospective jurors, the prosecutor indicated that this case had "garnered some media attention" and asked the potential jurors if they recalled viewing any of the media coverage. Ultimately, six of the prospective jurors did, and at least two of them indicated that they were uncertain whether they could be impartial based on the pretrial publicity to which they had been exposed. Defense counsel also briefly questioned the venire at times concerning pretrial publicity, as did the trial court. Neither the prosecution nor the defense challenged any of the jurors who had been exposed to pretrial publicity for cause. Collectively, however, the prosecution and defense used peremptory challenges to excuse all but one of the jurors who reported exposure to pretrial publicity. The sole exception was Juror #1, who was seated for trial. On the topic of media coverage, Juror #1 stated, "I heard about the case but I don't remember any details, I think I saw it on television." She further indicated that she had formed no opinions about the case based on pretrial publicity, believed that she could "be a fair and impartial juror in this matter," and thought that she would be able to "judge this case based solely on the evidence that [was] presented in court[.]"

On appeal, defendant argues that counsel performed ineffectively by failing to perform a more thorough voir dire of the prospective jurors with regard to racial considerations and pretrial publicity, failing to object to the trial court's "superfluous" voir dire and the court-imposed time limits on voir dire, failing to

request sequestration during voir dire, and by wasting peremptory challenges on potentially biased jurors instead of attempting to challenge them for cause. Defendant's arguments are unavailing.

Defendant's reliance on United States v. Cronic, 466 U.S. 648; 104 S. Ct. 2039; 80 L. Ed. 2d 657 (1984), is misplaced. Defendant contends that trial counsel's alleged failures during jury selection were so severe that they effectively deprived him of any assistance of counsel. Defendant further contends that jury selection is a "critical" stage of the proceedings and that, as such, counsel's poor performance constitutes the sort of structural error contemplated in Cronic. Thus, defendant argues, he is entitled to a presumption of prejudice and need not present any record evidence here to satisfy the second prong of the Strickland test for ineffective assistance (i.e., a reasonable probability of a different outcome but for counsel's deficient performance).

Defendant relies on a portion of Cronic in which the United States Supreme Court noted that there are "circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified," the most notable of which is "the complete denial of counsel" "at a critical stage" of the proceedings. Cronic, 466 U.S. at 658-659. The Cronic Court further noted that, in certain circumstances, "a presumption of prejudice is appropriate without inquiry into the actual conduct of the trial." *Id*. at 659-660.

As explained in People v. Lewis, 501 Mich. 1, 6-8; 903 N.W.2d 816 (2017), however, such statements in Cronic were hypothetical musings about situations not before the Court in that case, and thus they constituted dicta. Those statements of dictum were also "clearly incompatible" with the United States Supreme Court's earlier decision in Coleman v. Alabama, 399 U.S. 1; 90 S. Ct. 1999; 26 L. Ed. 2d 387 (1970), in which a majority of the Court, after deciding that a preliminary hearing was a "critical stage" of the proceedings, held that harmless-error review was appropriate despite the fact that the defendant had been deprived of counsel entirely at his preliminary hearing. Lewis, 501 Mich. at 6-7. Because the relevant statements in *Cronic* were dicta, whereas the pertinent holding in Coleman was binding, our Supreme Court held that it was obliged to follow Coleman and hold that the deprivation of counsel at a critical pretrial proceeding "is subject to harmless-error review under the federal Constitution." Lewis, 501 Mich. at 9.

Defendant offers no prejudice analysis, instead contending that under the Strickland test for ineffective assistance, he is entitled to a presumption that he was prejudiced by his counsel's alleged failures during jury selection. That argument runs directly contrary to the rule of law announced in Lewis, and thus, we reject it. See People v. Crockran, 292 Mich. App. 253, 256-257; 808 N.W.2d 499 (2011) ("[O]nly the Supreme Court has the authority to overrule its own decisions. Until it does so, all

lower courts and tribunals are bound by that prior decision and must follow it")
(quotation marks and citations omitted).

Indeed, we perceive defendant's reliance on Cronic as a tacit admission that he
cannot demonstrate prejudice on this record, and we agree he has failed to do so.
He has presented no record evidence demonstrating a reasonable probability that,
but for counsel's allegedly deficient performance during jury selection, the
outcome of the trial would have differed. Defendant presents no evidence that any
of the empaneled jurors were actually biased on grounds of race or pretrial
publicity. Absent such evidence, defendant cannot carry his burden under the
second prong of Strickland.

Moreover, with regard to the first prong of the Strickland test, defendant has failed
to rebut the strong presumption that his trial counsel employed effective trial
strategy during jury selection. Because of the inherently subjective nature of jury
selection, which is more art than science, this Court ordinarily refrains from second-
guessing counsel's decisions concerning prospective jurors. See, e.g., Unger, 278
Mich. App. at 258. "Perhaps the most important criteria in selecting a jury include
a potential juror's facial expressions, body language, and manner of answering
questions. However, as a reviewing court, we 'cannot see the jurors or listen to their
answers to voir dire questions.'" Id. (citation omitted), quoting People v. Robinson,
154 Mich. App. 92, 94; 397 N.W.2d 229 (1986). "Of all the important
communications between human beings, at least 50% is nonverbal." Robinson, 154
Mich. App. at 95 (quotation marks and citation omitted). "A lawyer's hunches,
based on his observations, may be as valid as any method of choosing a jury.
Defense counsel may want to retain certain prospective jurors, especially, and be
willing to express satisfaction so the prosecution will not or cannot eliminate them."
Id. Moreover, counsel may be rightfully concerned that, should he unsuccessfully
challenge a juror for cause, "that unsuccessful challenge ... would not be viewed
favorably by the jury." Id. at 94. Hence, as this Court observed in Robinson, "[o]ur
research has found no case in Michigan where defense counsel's failure to
challenge a juror or jurors has been held to be ineffective assistance of counsel. We
cannot imagine a case where a court would so hold[.]" Id. at 95. This case does not
present any exception to that well-founded rule.

## 2. THE DEFENSE'S OPENING STATEMENT

Defendant argues that trial counsel performed ineffectively by making the
following remarks during opening statement:

> We also expect the evidence to show that Mr. Parkman [i.e.,
> defendant] is an individual who hangs out at this, um, Wheat & Rye
> Restaurant. Um, he's familiar with the, the owner. Or not the owner,

14

> but some of the workers. He's familiar with the manager. Um, he goes to that establishment to sell drugs.
>
> You'll see from one of these videos that he's in back of the bar with another individual smoking a joint.
>
> You'll see that, um, Mr. Parkman is familiar with that establishment. He's familiar with the, um, the hotel.

When questioned about those comments at the <u>Ginther</u> hearing, counsel explained that he made them because they reflected the testimony that counsel anticipated at trial, and because they allowed the defense a theory to explain why defendant was at the hotel on the night in question. Specifically, based on what defendant had told counsel, counsel expected that the restaurant's manager would testify that defendant sold drugs at the bar. Using that anticipated testimony, defense counsel planned to argue that defendant went to the hotel on the night in question to sell narcotics, not to sexually assault the victim. At trial, however, when the prosecution aggressively questioned the manager about whether defendant had sold drugs out of the restaurant, the manager denied any knowledge that defendant had ever committed any illegal activity on the premises. Therefore, defense counsel abandoned the drug-dealer theory.

In light of the compelling evidence against defendant, defendant has failed to rebut the strong presumption that his trial counsel's chosen strategy was effective. Based on the hotel's surveillance footage, defense counsel was put in the difficult position of explaining why defendant—who was not a guest at the hotel—spent several hours there during the middle of the night, wandering around with a cell phone pressed to his ear. In light of the surveillance footage from the restaurant, which showed defendant closely associating with a man who is openly smoking something that appears to be marijuana, and also showed numerous people approach defendant throughout the evening, it could be plausibly argued that defendant's conduct was consistent with that of a drug dealer, and this activity would also explain defendant's presence at the hotel. Under the circumstances, a competent trial attorney might well decide to take that approach to explain defendant's overnight presence at the hotel—despite the negative character inferences that the jury might draw. We will not second-guess this strategy with the benefit of hindsight.

### 3. FAILURE TO REQUEST AN INSTRUCTION ON A NECESSARILY INCLUDED LESSER OFFENSE

Defendant argues that trial counsel performed ineffectively by failing to request an instruction regarding misdemeanor entering without permission, MCL 750.115, which is a lesser included offense of felony home invasion. We are unpersuaded.

At the Ginther hearing, counsel explained that his strategy had been to focus the defense on the CSC charges and on his client's actual innocence—i.e., on the fact that defendant denied ever having been in the victim's hotel room in the first instance. In light of the defense theory of the case, counsel's failure to request a lesser-offense instruction was a reasonable strategy. Had the jury been instructed regarding misdemeanor entering without permission as a lesser included lesser offense of first-degree home invasion, to argue effectively in favor of that lesser charge, defense counsel would have been forced to concede that defendant did, in fact, enter the victim's room. Given that the evidence at trial provided no noncriminal motive for defendant to enter the victim's room, it was altogether reasonable for counsel to focus the defense on disputing that defendant had entered the victim's room at all. Moreover, counsel might have reasonably decided that it was better to force the prosecution to prove the elements of first-degree home invasion beyond a reasonable doubt—or face acquittal on that charge—rather than affording the jury the opportunity to convict defendant of a lesser charge if it was unconvinced concerning first-degree home invasion.

In any event, defendant's instant claim of ineffective assistance is fatally flawed because he has failed to establish a reasonable probability of a different outcome but for counsel's failure to request the disputed instruction. Jurors are presumed to follow their instructions, People v. Graves, 458 Mich. 476, 486-487; 581 N.W.2d 229 (1998), and in this case, after the jury was instructed concerning the elements of the charged offenses and the prosecution's burden of proof, it found defendant guilty of first-degree home invasion, CSC-I, and CSC-III. Defendant has presented no record evidence demonstrating a reasonable probability that the jury would instead have found him guilty of misdemeanor entry without permission had it been given that option.

***

## 5. FAILURE TO INVESTIGATE CELL PHONE RECORDS

At the Ginther hearing, defendant's trial counsel testified that either before or during defendant's second trial, defendant's sister informed counsel that defendant had a second cell phone that was registered under an alias. Counsel "delved into it" and spoke with defendant about the matter, and defendant indicated that he had used the cell phone in question to make calls from the hotel on the evening of the victim's assault. But defendant "was unable to provide [counsel] with phone numbers ... or contact numbers" for the people with whom he claimed that he had spoken on the evening of the offense.

On appeal, defendant argues that trial counsel performed ineffectively by failing to investigate the cell phone records. However, assuming, without deciding, that counsel should have investigated them, defendant nevertheless is not entitled to relief here. Defendant concedes that the disputed records "have now been purged

16

and there is no way of determining what they would have established." In other words, defendant admittedly has no way of demonstrating that counsel's further investigation into the cell phone records would have yielded any favorable evidence. Therefore, defendant cannot carry his burden of demonstrating a reasonable probability that, but for counsel's allegedly deficient performance in this respect, the result of his trial would have been different.

Parkman, 2020 WL 3022552 at *4-8 (moot claim not raised on habeas review omitted).

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court set forth a two-prong test for determining whether a habeas petitioner has received the ineffective assistance of counsel. First, a petitioner must prove that counsel's performance was deficient. This requires a showing that counsel made errors so serious that he or she was not functioning as counsel as guaranteed by the Sixth Amendment. Strickland, 466 U.S. at 687. Second, the petitioner must establish that counsel's deficient performance prejudiced the defense. Counsel's errors must have been so serious that they deprived the petitioner of a fair trial or appeal. Id.

As to the performance prong, a petitioner must identify acts that were "outside the wide range of professionally competent assistance" in order to prove deficient performance. Id. at 690. A reviewing court's scrutiny of counsel's performance is highly deferential. Id. at 689. Counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. Id. at 690. The petitioner bears the burden of overcoming the presumption that the challenged actions were sound trial strategy. Id. at 689.

To satisfy the prejudice prong under Strickland, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. A reasonable probability is one that is sufficient to

17

undermine confidence in the outcome.  Id.  "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." Id. at 686.

The Supreme Court has confirmed that a federal court's consideration of ineffective assistance of counsel claims arising from state criminal proceedings is quite limited on habeas review due to the deference accorded trial attorneys and state appellate courts reviewing their performance.  "The standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so."  Harrington, 562 U.S. at 105 (punctuation modified).  "When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard."  Id.

Petitioner fails to show that trial counsel was ineffective for failing to voir dire the prospective jurors on racial prejudice.  The Sixth Circuit has observed that "[c]ounsel is accorded particular deference when conducting voir dire.  An attorney's actions during voir dire are considered to be matters of trial strategy."  Hughes v. United States, 258 F.3d 453, 457 (6th Cir. 2001).  As such, those actions are also presumed to be sound.  Harris v. Konteh, 198 F. App'x 448, 454–455 (6th Cir. 2006) (citing Strickland, 466 U.S. at 689).

At the Ginther hearing, counsel acknowledged that he was concerned about race as a factor in the case and explained that he addressed his concern by questioning the jurors about their abilities to be fair and unbiased.  He noted that jurors would not admit that they were racist and that he was satisfied with his general voir dire questions about being fair and impartial.  Post

Conviction Hr'g Tr. at PageID.1565–1566 (Dkt. 7-15).   Counsel's thought-process and performance were reasonable.  Petitioner has not overcome the presumption that counsel's conduct during jury voir dire was sound trial strategy.  See, e.g., Stojetz v. Ishee, 892 F.3d 175, 194 (6th Cir. 2018) (ruling that petitioner failed to overcome presumption that counsel's strategy to minimize race was reasonable and affirming denial of habeas relief).

Additionally, Petitioner offers no evidence to indicate that any of the impaneled jurors were biased against him based upon his race.  "It ... go[es] without saying that the absence of evidence cannot overcome the 'strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance.'"  Burt v. Titlow, 571 U.S. 12, 23, (2013) (quoting Strickland, 466 U.S. at 689).   Petitioner fails to establish that trial counsel was ineffective and, more importantly for purposes of habeas review, he fails to establish that the Michigan Court of Appeals' ruling to that effect was unreasonable.  Habeas relief is not warranted on this claim.

Petitioner also fails to show that trial counsel was ineffective for telling the jury during opening statements that he anticipated that the evidence would show that Petitioner was a drug dealer.  At the Ginther hearing, counsel explained that he made such remarks during opening statements because Petitioner told him that he sold marijuana to the restaurant manager, he believed that the manager would so testify (truthfully), and he thought that he could use drug dealing as a reason to justify Petitioner's late-night presence at the hotel.  Post Conviction Hr'g Tr. at PageID.1572–1573 (Dkt. 7-15).  Counsel also testified that Petitioner told him that he was at the hotel to check on a relative/close friend and gave him a name, but could not provide any contact information, and that Petitioner told him that he knew various people at the hotel, but did not provide names or contact information for them.  Id. at PageID.1585–1587.

19

Counsel's strategy in this regard was reasonable.  Counsel had no reason to believe that either Petitioner was lying to him about selling marijuana to the restaurant manager or that the restaurant manager would lie about it.  Given the information available to counsel at the time of opening statements (or lack thereof), and given the video recording showing Petitioner smoking marijuana at the restaurant, his strategy to reference drug dealing to explain Petitioner's late-night presence at the hotel was reasonable.  The fact that counsel's strategy was ultimately unsuccessful does not mean that counsel was ineffective.  See Moss v. Hofbauer, 286 F.3d 851, 859 (6th Cir. 2002) ("an ineffective assistance of counsel claim cannot survive so long as the decisions of a defendant's trial counsel were reasonable, even if mistaken").

As part of this claim, Petitioner argues that counsel should have interviewed the restaurant manager before trial to determine what his testimony would have been before assuming that he would admit buying drugs from Petitioner and that counsel should have instead argued that Petitioner was at the hotel to "check on" a relative/close friend.  Petitioner, however, offers no evidence to show that the restaurant manager would have denied buying drugs from Petitioner if interviewed by counsel and offers no evidence from any relative or friend to support any claim that Petitioner was at the hotel to check on them.  It is well-settled that conclusory allegations, without evidentiary support, are insufficient to warrant federal habeas relief.  See Workman v. Bell, 178 F.3d 759, 771 (6th Cir. 1998) (conclusory allegations of ineffective assistance of counsel do not justify habeas relief).  "[A] habeas petitioner has the burden of establishing his right to federal habeas relief and of proving all facts necessary to show a constitutional violation." Torres v. MacLaren, 798 F. App'x 916, 920 (6th Cir. 2020) (punctuation modified).  Petitioner has not done so.

20

Additionally, given the significant evidence of guilt presented at trial, including the victim's testimony, 9/13/17 Jury Trial Tr. at PageID.693–694 (Dkt. 7-8), 9/14/17 Jury Trial Tr. at PageID.707–746 (Dkt. 7-9), the hotel night manager's testimony, the police testimony and related videos of Petitioner's suspicious behavior at the restaurant and hotel, 9/18/17 Jury Trial Tr. at PageID.1021–1022 (Dkt. 7-10), 9/19/17 Jury Trial Tr. at PageID.1172–1180, 1259–1266 (Dkt. 7-11), 9/20/17 Jury Trial Tr. at PageID.1292–1314 (Dkt. 7-12), and the DNA evidence, 9/14/17 Jury Trial Tr. at PageID.1055–1058 (Dkt. 7-10), 9/19/17 Jury Trial Tr. at PageID.1126–1129 (Dkt. 7-11), Petitioner cannot demonstrate that he was prejudiced by counsel's opening statement.   He fails to establish that trial counsel was ineffective under the Strickland standard. Habeas relief is not warranted on this claim.

Petitioner also fails to show that trial counsel was ineffective for failing to request a misdemeanor entry without owner's permission instruction under Mich. Comp. Laws § 750.115. At the Ginther hearing, counsel indicated that he was aware of the lesser offense, but did not request the instruction because Petitioner denied that he was in the victim's room and denied that he committed the sexual assault.   Counsel also testified that his primary focus was on the criminal sexual conduct charge.   Post Conviction Hr'g Tr. at PageID.1576–1578 (Dkt. 7-15).   Counsel's decision was reasonable given that Petitioner's defense was that he was never in the victim's room and that he did not commit the assault.   An instruction on misdemeanor entry without owner's permission would have been inconsistent that defense because it would have required counsel to argue that Petitioner was, in fact, in the victim's room on the night of the crime.   See Blackwell v. Chapman, No. 20-1441, 2020 WL 6582144, *3 (6th Cir. Sept. 28, 2020) (affirming district court's ruling that counsel's strategy to pursue an "all or nothing" defense and not request

21

a lesser included offense instruction was reasonable); Harrop v. Sheets, 430 F. App'x 500, 507 (6th Cir. 2011) (stating that counsel could have reasonably decided not to request a lesser offense instruction because such an instruction "would have diluted the other arguments [counsel] was advancing to the jury"). Again, the fact that trial counsel's strategy was ultimately unsuccessful does not mean that counsel was ineffective. Moss, 286 F.3d at 859. Petitioner fails to show that trial counsel's performance was deficient.

Furthermore, as discussed, the prosecution presented significant evidence of Petitioner's guilt of first-degree home invasion and first-degree criminal sexual conduct at trial, including the victim's testimony 9/13/17 Jury Trial Tr. at PageID.693–694 (Dkt. 7-8), 9/14/17 Jury Trial Tr. at PageID.707–746 (Dkt. 7-9), the hotel night manager's testimony, the police testimony, and related videos of Petitioner's suspicious behavior at the restaurant and hotel, 9/18/17 Jury Trial Tr. at PageID.1021–1022 (Dkt. 7-10), 9/19/17 Jury Trial Tr. at PageID.1172–1180, 1259–1266 (Dkt. 7-11), 9/20/17 Jury Trial Tr. at PageID.1292–1314 (Dkt. 7-12), and the DNA evidence 9/14/17 Jury Trial Tr. at PageID.1055–1058 (Dkt. 7-10), 9/19/17 Jury Trial Tr. at PageID.1126–1129 (Dkt. 7-11). Given such evidence, there is no reasonable probability that the outcome at trial would have been different had the trial court instructed the jury on the lesser offense. Petitioner fails to establish that he was prejudiced by trial counsel's conduct. Habeas relief is not warranted on this claim.

Petitioner also fails to show that trial counsel was ineffective for failing to investigate cellphone records from his alleged second cellphone. It is well-settled that defense counsel must conduct a reasonable investigation into the facts of a defendant's case, or make a reasonable determination that such investigation is unnecessary. Wiggins, 539 U.S. at 522–523. The duty

22

to investigate "includes the obligation to investigate all witnesses who may have information concerning ... guilt or innocence." Towns v. Smith, 395 F.3d 251, 258 (6th Cir. 2005). That being said, decisions as to what evidence to present and whether to call certain witnesses are presumed to be matters of trial strategy. When making strategic decisions, counsel's conduct must be reasonable. Roe v. Flores-Ortega, 528 U.S. 470, 481 (2000). The failure to call witnesses or present evidence constitutes ineffective assistance of counsel only when it deprives a defendant of a substantial defense. Hutchison v. Bell, 303 F.3d 720, 749 (6th Cir. 2002).

At the Ginther hearing, counsel acknowledged that the hotel video recordings showed Petitioner on a cellphone at the hotel during the night of the crime although his cellphone records showed that he did not make or receive any calls at that time. Counsel also acknowledged that he was aware of the possibility that Petitioner had a second cellphone. Counsel testified that he "delved into it" by talking to Petitioner and discovered that the cellphone was not registered in his name and that Petitioner was unable to provide him with contact information or the numbers of anyone who he was talking to that night. Counsel admitted that he did not seek to obtain those cellphone records. Post Conviction Hr'g Tr. at PageID.1569–1572 (Dkt. 7-15).

Even assuming that trial counsel erred by not attempting to obtain the additional cellphone records, Petitioner fails to demonstrate that he was prejudiced by counsel's conduct. He offers no cellphone records to support his claim that such information would have benefitted his defense at trial. As discussed, conclusory allegations, without evidentiary support, are insufficient to warrant federal habeas relief. See Workman, 178 F.3d at 771.

"[A] habeas petitioner 'has the burden of establishing his right to federal habeas relief and of proving all facts necessary to show a constitutional violation.'" Torres, 798 F. App'x at 920.

Petitioner has not done so.  And even if the cellphone records could have been linked to Petitioner and would have shown that he was actually on calls while at the hotel, they would not have exonerated him of the crimes or had a reasonable probability of affecting the outcome at trial. Petitioner fails to establish that trial counsel was ineffective.  Habeas relief is not warranted on this claim.

Lastly, Petitioner is not entitled to habeas relief based upon cumulative error.  The Supreme Court "has not held that distinct constitutional claims can be cumulated to grant habeas relief." Lorraine v. Coyle, 291 F.3d 416, 447 (6th Cir. 2002).  Furthermore, the Sixth Circuit has ruled that such a cumulative error claim is not cognizable on habeas review.  See Sheppard v. Bagley, 657 F.3d 338, 348 (6th Cir. 2011).  Petitioner thus fails to state a claim upon which relief may be granted as to this issue.  Additionally, given that none of the other ineffective assistance of trial counsel claims have merit, Petitioner cannot establish that he is entitled to relief based upon cumulative error.   Habeas relief is not warranted on this claim.

### 2.  Judicial Bias Claim

Petitioner next asserts that he is entitled to habeas relief because the trial court was biased against him.  Specifically, he asserts that the trial court pierced the veil of judicial impartiality by interceding in trial counsel's cross-examination of the hotel night manager about the relevancy of testimony and photographs involving a hotel ladder.  Respondent contends that this claim is procedurally defaulted and that it lacks merit.

The Michigan Court of Appeals reviewed this claim for plain error on direct appeal and denied relief.  The court explained in relevant part:

24

Defendant argues that the trial court made certain comments in the presence of the jury that pierced the veil of judicial impartiality, thereby depriving him of his due process right to a fair trial.… We find no plain error warranting reversal.

On the fourth day of trial, while the defense was cross-examining the hotel's general manager about ladders that are stored outside on the hotel property, the following exchange occurred:

> Q. You have ladders hanging out in, in the back lot of the, the hotel, right?
>
> A. We, we had a ladder by the shed, correct.
> * * *
> Q. Right. You, you still have it there, right?
>
> A. I believe so
>
> Q. Okay. And you have a ladder on the ground next to the shed?
>
> A. I, I believe it, it may still be there if it's in use. I'm not exactly certain if it's there at this moment right now....
> * * *
> Q. Okay. So you don't know if it's locked or unlocked, if it's there or not, right?
>
> A. I know that if it's being used, it's accessible and if it's not being used, it's not.
>
> Q. Okay. Well, I'm gonna [sic] show you some—

One of the trial prosecutors interjected, stating that he could see that defense counsel was intending to show the witness pictures that had been taken at the hotel "a couple of days" earlier. The prosecutor seemingly began to argue that the photos were not relevant, but the trial court interrupted, leading to the following exchange:

> THE COURT: What difference does it make whether there's a ladder out in the back of the hotel?
>
> I mean what is it supposed to show, your client's innocence or something?
>
> [DEFENSE COUNSEL]: Yes, Judge.
>
> THE COURT: Really?

25

[DEFENSE COUNSEL]: I have—

THE COURT: How.

[DEFENSE COUNSEL]: —no further questions, Judge.

THE COURT: All right.

Defendant argues that the trial court's comments pierced the veil of judicial impartiality.

"A defendant claiming judicial bias must overcome a heavy presumption of judicial impartiality." Jackson, 292 Mich. App. at 598 (quotation marks and citation omitted). "Judicial misconduct may come in myriad forms, including belittling of counsel, inappropriate questioning of witnesses, providing improper strategic advice to a particular side, biased commentary in front of the jury, or a variety of other inappropriate actions." People v. Stevens, 498 Mich. 162, 172-173; 869 N.W.2d 233 (2015). "A trial judge's conduct deprives a party of a fair trial if a trial judge's conduct pierces the veil of judicial impartiality," and this occurs "when, considering the totality of the circumstances, it is reasonably likely that the judge's conduct improperly influenced the jury by creating the appearance of advocacy or partiality against a party." Id. at 170.

In evaluating the totality of the circumstances, the reviewing court should inquire into a variety of factors, including the nature of the judicial conduct, the tone and demeanor of the trial judge, the scope of the judicial conduct in the context of the length and complexity of the trial and issues therein, the extent to which the judge's conduct was directed at one side more than the other, and the presence of any curative instructions.... Reviewing courts may consider additional factors if they are relevant to the determination of partiality in a particular case. [Id. at 172.]

This "fact-specific" inquiry must be examined on a case-by-case basis. Id. at 171. "A single inappropriate act does not necessarily give the appearance of advocacy or partiality, but a single instance of misconduct may be so egregious that it pierces the veil of impartiality." Id.

Viewed within the totality of the circumstances, the trial court's disputed remarks were not so egregious as to pierce the veil of judicial impartiality. The judicial comments in question spanned one brief moment of a seven-day jury trial, and after a thorough review of the transcripts, we conclude that the trial court's overall tone and demeanor toward the parties at trial was evenhanded. Moreover, any perceived prejudice to defendant from the trial court's brief remarks was dissipated when the trial court subsequently instructed the jury that it was to decide the case based solely

26

on the evidence, that the court's "comments, rulings, [and] questions" were not evidence, that such comments were not intended to convey the court's "personal opinion about the case," and that if the jurors believed that the court had such an opinion, they should "pay no attention to that opinion." Hence, we reject defendant's contention that the court's disputed comments constituted outcome-determinative plain error.

Parkman, 2020 WL 3022552 at *15-16 (lack of objection and plain error text omitted).

The state court's denial of relief is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. The Due Process Clause of the Fourteenth Amendment requires a fair trial in a fair tribunal before a judge with no actual bias against the defendant or an interest in the outcome of the case. Bracy v. Gramley, 520 U.S. 899, 904–905 (1997). Judicial misconduct claims involve two types of cases. One group addresses charges of "judicial bias" stemming from a judge's "personal interest" in the outcome of a case, usually derived from some extrajudicial association with the cause or one of the parties. In re Murchison, 349 U.S. 133, 136 (1955). The second group concerns charges of "judicial misconduct" in which the judge is accused of conducting the proceedings in a manner which exhibits a "deep-seated favoritism or antagonism that would make fair judgment impossible." Liteky v. United States, 510 U.S. 540, 555–556 (1994).

Adverse rulings themselves are not sufficient to establish bias or prejudice. See id., at 555 ("judicial rulings alone almost never constitute a valid basis for a bias or partiality motion"). A constitutional violation occurs only when a judge's rulings or statements show "a predisposition so extreme as to display clear inability to render fair judgment." Johnson v. Bagley, 544 F.3d 592, 597 (6th Cir. 2008). In reviewing a judicial bias claim, a federal habeas court should presume that the judge properly discharged his or her official duties. Withrow v. Larkin, 421 U.S. 35, 47 (1975).d

27

In this case, Petitioner fails to allege facts which show that the trial court was biased against him. He neither alleges nor establishes that the trial court had a "personal interest" in his criminal case. He also fails to show that the trial court had a "deep-seated favoritism or antagonism that would make fair judgment impossible" such that the court engaged in judicial misconduct. Rather, the record indicates that the trial court exhibited impatience with counsel and was attempting to move the case along by eliminating irrelevant questioning. A judge's "expressions of impatience, dissatisfaction, annoyance, and even anger" do not establish bias. Liteky, 510 U.S. at 555-556, nor do a judge's "ordinary efforts" at courtroom administration, even "stern and short-tempered" ones. Id. at 556. Additionally, judicial remarks "that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge." Id. at 555. Such was the case here.

Moreover, any potential prejudice to Petitioner was mitigated by the trial court's instructions to the jury that nothing the court said was meant to reflect his own opinion about the case, that the jurors were the only ones to decide the case, that he was not trying to influence their vote or express a personal opinion about the case when he made a comment or gave an instruction, and that if the jurors believed he had an opinion about how they should decide the case, they should pay no attention to that opinion and base their verdict only on the evidence 9/13/17 Trial Tr. at PageID.512 (Dkt. 7-8); 9/20/17 Trial Tr. at PageID.1439–1440 (Dkt. 7-12). Petitioner has not overcome the presumption that the trial court properly discharged its duties. He fails to establish that the trial court was biased against him or that the trial court's remarks rendered his trial fundamentally unfair. Habeas relief is not warranted on this claim.

28

### 3. Jury Instruction Claims

Lastly, Petitioner asserts that he is entitled to habeas relief because the trial court erred in instructing the jury as to "number of witnesses" and "circumstantial evidence." Respondent contends that these claims are unexhausted, are procedurally defaulted, and lack merit.

The Michigan Court of Appeals reviewed these claims for plain error on direct appeal and denied relief. The court explained in relevant part:

> Defendant argues that the trial court erroneously instructed the jury on several points. Although we agree that some of the trial court's modifications to the model jury instructions were ill-advised, we find no plain error warranting reversal.
>
> \*\*\*
>
> Defendant next contends that the trial court plainly erred by adding certain words to M. Crim. JI 5.2—including the phrase "or not"—as follows:
>
>> And you should not decide this case based on which side presented more evidence or more witnesses. Instead, you should think about each witness and each piece of evidence and whether you believe them. And then you must decide whether the testimony and the evidence that you believe prove beyond a reasonable doubt that the defendant is guilty or not. [Emphasis added.]
>
> We agree with defendant that the trial court erred, and did so plainly, by altering the wording of M. Crim. JI 5.2. "A criminal defendant is entitled to have a properly instructed jury consider the evidence against him." People v. Riddle, 467 Mich. 116, 124; 649 N.W.2d 30 (2002). "Further, MCR 2.512(D)(2) requires that the jury be instructed using the Michigan Model Criminal Jury Instructions if '(a) they are applicable, (b) they accurately state the applicable law, and (c) they are requested by a party.'" People v. Rosa, 322 Mich. App. 726, 739; 913 N.W.2d 392 (2018). By adding the phrase "or not" where it did in M. Crim. JI 5.2, the trial court inadvertently suggested that the jury was charged with deciding whether it had been proven beyond a reasonable doubt that defendant was—or was not—guilty. That suggestion is fundamentally incompatible with the presumption of innocence. See People v. Beck, _ Mich. _, _; _ N.W.2d _ (2019) (Docket No. 152934), cert pending; slip op. at 13 ("A defendant is entitled to a presumption of innocence as to all charged conduct until proven guilty beyond a reasonable doubt, and that presumption is supposed to do meaningful constitutional work as long as it applies. At least that's what we tell the accused and the jury about how it works.") (footnotes omitted). Rather than ad-libbing, the trial court should have read M. Crim. JI 5.2 to the jury as it is written.

Even so, we conclude that defendant's instant claim of instructional error fails under the third prong of the Carines test. "When this Court reviews jury instructions for reversible error, we consider the instructions as a whole," People v. Richardson, 490 Mich. 115, 119; 803 N.W.2d 302 (2011), and "an imperfect instruction is not grounds for setting aside a conviction if the instruction fairly presented the issues to be tried and adequately protected the defendant's rights," People v. Kowalski, 489 Mich. 488, 501-502; 803 N.W.2d 200 (2011). Moreover, the trial court instructed the jury that defendant was presumed to be innocent and that "this presumption continue[d] throughout the trial and entitle[d] the defendant to a verdict of not guilty unless or until [the jury was] satisfied beyond a reasonable doubt that he [wa]s guilty." Viewing the instructions cumulatively, they were sufficient to safeguard defendant's presumption of innocence. Hence, defendant has failed to demonstrate that this instructional error prejudiced his substantial rights.

Defendant's final claim of instructional error regards the model instruction concerning circumstantial evidence, M. Crim. JI 4.3. He argues that the trial court plainly erred by altering the language of M. Crim. JI 4.3 as follows:

> But facts can also be proven by indirect or what we call circumstantial evidence. And circumstantial evidence is simply evidence that normally or reasonably leads to certain inevitable conclusions. So, for example, maybe you don't actually see it raining outside but you see someone walk in the courtroom wearing a raincoat carrying an umbrella covered with small drops of water. Well, that is circumstantial evidence that it's raining outside.
>
> And you may consider circumstantial evidence. There's nothing wrong with it. Circumstantial evidence by itself, or together with direct evidence can be used to prove a crime. [Emphasis added.]

To the extent that defendant complains about the trial court's comment that there is "nothing wrong with" circumstantial evidence, we find his argument meritless. The trial court stated the law correctly. There is, in fact, nothing wrong with circumstantial evidence. See People v. Hardiman, 466 Mich. 417, 429 n. 7; 646 N.W.2d 158 (2002) ("circumstantial evidence is oftentimes stronger and more satisfactory than direct evidence") (quotation marks and citation omitted).

We agree that the trial court plainly erred by changing the language of M. Crim. JI 4.3(3) to define circumstantial evidence as evidence "that normally or reasonably leads to certain inevitable conclusions." We are aware of no authority supporting the proposition that circumstantial evidence is evidence that normally or reasonably leads to "inevitable conclusions." Indeed, such a definition of circumstantial

evidence would seem to be far too restrictive. Circumstantial evidence has been broadly defined as "[e]vidence based on inference and not on personal knowledge or observation" or "[a]ll evidence that is not given by eyewitness testimony." Black's Law Dictionary (11th ed. 2019). However, viewing this instruction in the context of the instructions as a cohesive whole, defendant cannot demonstrate any prejudice from the trial court's error. Given that the trial court properly instructed the jury with the classic raincoat-and-umbrella example of circumstantial evidence, the jury was fairly instructed on the subject. That commonsense example was sufficient to properly explain the concept of circumstantial evidence to the jurors. And in any event, in light of the strong nature of the direct and circumstantial proofs against defendant, he cannot demonstrate that any of the alleged instructional errors were outcome-determinative.

Parkman, 2020 WL 3022552 at *10-13 (text on additional jury instruction claim not raised on habeas review omitted).

The state court's denial of relief is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts.  First, to the extent that Petitioner asserts that the trial court erred in instructing the jury under Michigan law, he merely alleges a violation of state law which does not justify federal habeas relief.  See, e.g., Rashad v. Lafler, 675 F.3d 564, 569 (6th Cir. 2012) ("a state court's interpretation of the propriety of a jury instruction under state law does not entitle a habeas claimant to relief").  State courts are the final arbiters of state law and the federal courts will not intervene in such matters.  Habeas relief does not lie for perceived errors of state law.  Estelle v. McGuire, 502 U.S. 62, 67–68 (1991).

Second, Petitioner fails to establish that the jury instructions violated his federal constitutional rights.  The Michigan Court of Appeals essentially determined that the alleged errors in instructing the jury did not render the trial fundamentally unfair and/or were harmless. That decision was reasonable.

In order for habeas relief to be warranted based on incorrect jury instructions, a petitioner must show more than that the instructions are undesirable, erroneous or universally condemned.

31

Rather, taken as a whole, they must be so infirm that they rendered the entire trial fundamentally unfair. Estelle, 502 U.S. at 72. A jury instruction is not to be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record. Jones v. United States, 527 U.S. 373, 391 (1999). The failure to give an instruction that is supported by the evidence does not automatically justify habeas relief – the failure to instruct must have rendered the trial fundamentally unfair. Cupp v. Naughten, 414 U.S. 141, 147 (1973). "An omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." Henderson v. Kibbe, 431 U.S. 145, 155 (1977). Jury instruction errors rarely form the basis for federal habeas relief. Estelle, 502 U.S. at 71–72.

On direct review of a conviction, a constitutional error is considered harmless if the reviewing court finds it was harmless beyond a reasonable doubt. Chapman v. California, 386 U.S. 18, 24 (1967). In Brecht v. Abrahamson, the Supreme Court ruled that, for purposes of federal habeas review, a constitutional error that implicates trial procedures is considered harmless if it did not have a "substantial and injurious effect or influence in determining the jury's verdict." 507 U.S. 619, 637 (1993).

More recently, the Supreme Court has clarified that for a habeas petitioner to obtain relief on an error that a state appellate court has deemed harmless, the petitioner must not only satisfy the Brecht standard and show that the error had a substantial and injurious effect or influence on the verdict, he or she must also show that the state court's ruling that the error was harmless beyond a reasonable doubt was an unreasonable application of Chapman. Brown v. Davenport, 596 U.S. 118, 127, 133–136 (2022). "When a state court has applied Chapman, § 2254(d)(1) requires a habeas petitioner to prove that the state court's decision was unreasonable." Id. at 135.

32

The trial court's jury instructions, considered as a whole, were sufficient to protect Petitioner's rights.   In particular, the trial court instructed the jury on the presumption of innocence and reasonable doubt, explaining that the presumption "continues throughout the trial and entitles the defendant to a verdict of not guilty unless or until you're satisfied beyond a reasonable doubt that he is guilty." 9/11/17 Jury Trial Tr. at PageID.365 (Dkt. 7-7); 9/20/17 Jury Trial Tr. at PageID.1437 (Dkt. 7-12).   The trial court also instructed the jury that the prosecutor "must prove each element of each crime beyond a reasonable doubt.  The defendant is not required to prove his innocence or to do anything.  So in the end, if you find that the prosecutor has not proven every element beyond a reasonable doubt, then you must find the defendant not guilty." 9/11/17 Jury Trial Tr. at PageID.365; 9/20/17 Jury Trial Tr. at PageID.1438. Additionally, as to circumstantial evidence, the trial court correctly informed the jury that they could consider such evidence, along with direct evidence, and gave the "rain/umbrella" example to describe circumstantial evidence.  Such instructions were sufficient to convey the concept of circumstantial evidence to the jury.  Petitioner fails to establish that the jury instructions, as given, rendered his trial fundamentally unfair.

Furthermore, given the significant evidence of guilt presented at trial, including the victim's testimony 9/13/17 Jury Trial Tr. at PageID.693–694 (Dkt. 7-8), 9/14/17 Jury Trial Tr. at PageID.707–746 (Dkt. 7-9), the hotel night manager's testimony, the police testimony and related videos of Petitioner's suspicious behavior at the restaurant and hotel, 9/18/17 Jury Trial Tr. at PageID.1021–1022 (Dkt. 7-10), 9/19/17 Jury Trial Tr. at PageID.1172–1180, 1259–1266 (Dkt. 7-11), 9/20/17 Jury Trial Tr. at PageID.1292–1314 (Dkt. 7-12), and the DNA evidence 9/14/17 Jury Trial Tr. at PageID.1055–1058 (Dkt. 7-10), 9/19/17 Jury Trial Tr. at PageID.1126–1129

33

(Dkt. 7-11), any error in instructing the jury was harmless.  Petitioner fails to establish that the claimed jury instruction errors had a substantial or injurious effect or influence on the jury's verdict or that the Michigan Court of Appeals' unreasonably determined that such errors were harmless beyond a reasonable doubt.  Habeas relief is not warranted on these claims.

### C.  Certificate of Appealability and IFP on Appeal

Before Petitioner may appeal, a certificate of appealability must issue.  See 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b).  A certificate of appealability may issue only if a petitioner makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  When a federal court denies relief on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the court's assessment of the claims debatable or wrong.  Slack v. McDaniel, 529 U.S. 473, 484-485 (2000).  When a court denies relief on procedural grounds, a certificate of appealability should issue if the petitioner demonstrates that reasonable jurists would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right, and reasonable jurists would find it debatable whether the court was correct in its procedural ruling.  Id.  The Court concludes that Petitioner fails to make a substantial showing of the denial of a constitutional right as to his habeas claims and that reasonable jurists could not debate the correctness of the Court's procedural ruling.  Accordingly, the Court denies a certificate of appealability.

Lastly, the Court concludes that an appeal from this decision cannot be taken in good faith. See Fed. R. App. P. 24(a).  Accordingly, the Court denies Petitioner leave to proceed IFP on appeal.

### IV.    CONCLUSION

For the reasons stated, the Court concludes that Petitioner is not entitled to federal habeas relief on his claims.  Accordingly, the Court denies and dismisses with prejudice the habeas petition.  The Court also denies a certificate of appealability and denies leave to proceed IFP on appeal.

**SO ORDERED.**

Dated: May 29, 2026                                              s/Mark A. Goldsmith
Detroit, Michigan                                                MARK A. GOLDSMITH
                                                                 United States District Judge


**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First-Class U.S. mail addresses disclosed on the Notice of Electronic Filing on May 29, 2026.

                                                                 s/Joseph Heacox
                                                                 JOSEPH HEACOX
                                                                 Case Manager

35